IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

APRIL L.,[1]

          Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

Case No. 3:17-cv-01803-AA
**OPINION AND ORDER**

AIKEN, District Judge:

    April L. ("Plaintiff") brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied Plaintiff's application for Supplemental Security Income ("SSI") on June 28, 2018. For the reasons set forth below, the Commissioner's decision is AFFIRMED, and the case is DISMISSED.

/ / /

/ / /

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

## BACKGROUND

Plaintiff filed an application for SSI on February 26, 2016. Because he was a minor when he filed his application, the Commissioner initially adjudicated his case under the child disability standards as well as the adult disability standards. Plaintiff alleged disability due to ADHD, depressive disorder, bipolar disorder, neurodevelopmental disorder, PTSD, sleep problems, migraine headaches, and obesity in his SSI application. Plaintiff subsequently amended his disability onset date to April 7, 2016, the date of his 18th birthday.

The application was initially denied on May 16, 2016 and upon reconsideration on September 26, 2016. An administrative hearing was held before an administrative law judge ("ALJ") at Plaintiff's request on June 13, 2017 where Plaintiff and a vocational expert ("VE") testified, subsequent to which the ALJ issued an unfavorable decision. After the Appeals Council declined review, the ALJ's decision became final. Plaintiff now seeks review of the ALJ's decision.

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." In reviewing the ALJ's findings, district courts act in an appellate capacity not as the trier of fact. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Circ. 1989). The district court must affirm the ALJ's decision unless it contains legal error or lacks substantial evidentiary support. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Harmless legal errors are not grounds for reversal. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Substantial evidence is more

than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and internal quotation marks omitted). The complete record must be evaluated and the evidence that supports and detracts from the ALJ's conclusion must be weighed. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the Plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, determining: "(1) whether the claimant is 'doing substantial gainful activity'; (2) whether the claimant has a 'severe medically determinable physical or mental impairment' or combination of impairments that has lasted for more than 12 months; (3) whether the impairment 'meets or equals' one of the listings in the regulations; (4) whether, given the claimant's 'residual functional capacity,' the claimant can still do his or her 'past relevant work' and (5) whether the claimant 'can make an adjustment to other work.'" *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 20 C.F.R. §§ 404.1520(a), 416.920(a)).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. At step two, the ALJ found that Plaintiff had the following severe limitations: "[a] depressive, bipolar or related disorder; an anxiety disorder; a neurodevelopmental disorder; and [PTSD]." Tr. 13. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the requirements of a listed impairment.

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e); § 416.920(e). The ALJ found that Plaintiff

> has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: He is limited to simple, routine tasks consistent with occupations with an SVP of 1 or 2 and a general education development (GED) level not exceeding 2. He should have no public contact. He is limited to work involving no more than superficial coworker contact and no teamwork.

Tr. 14–15. At step four, the ALJ found that Plaintiff had no past relevant work experience. At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and found that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, including janitor, laboratory helper, and recycler/reclaimer. Accordingly, the ALJ found that Plaintiff was not disabled under the Act.

## DISCUSSION

Plaintiff contends that the ALJ committed four harmful errors: (i) failing to admit and consider the medical source statement of PMHNP Rebekah Phillips, and in his related duty to develop the record; (ii) failing to incorporate Plaintiff's adaptation limitations into his RFC assessment; (iii) failing to properly weigh the opinions of Charlene Sabin, M.D., Scott Alvord, Psy. D., Tasha Miniszewski, LCSW, as well as the opinions of Drs. Scott Kaper and Ben Kessler,

the State psychological consultants; and (iv) failing to properly evaluate Plaintiff's testimony and that of his mother, Kimberly L.

## I.     *Admitting the Questionnaire and the ALJ's Duty to Develop the Record*

Rebekah Phillips, PMHNP, is Plaintiff's treating mental healthcare provider.   Plaintiff submitted a partially-completed questionnaire by Ms. Phillips that opined on the severity of Plaintiff's impairments and limitations the day before his administrative hearing.  The ALJ rejected the questionnaire under 20 C.F.R. § 416.1435(b) because he found that it was not submitted in a timely manner, *i.e.*, at least five business days before the hearing.

Plaintiff argues that (1) the exclusion of the questionnaire was improper because the ALJ failed to apply the good cause exception to late evidentiary submissions under § 416.1435(b)(3) and (2) the exclusion violates an ALJ's duty to develop the record.  The Commissioner concedes that the ALJ erred in not admitting Ms. Phillips's opinion statement but argues that the exclusion was harmless because the opinion was not probative and that it was substantially similar to the opinion submitted by Ms. Miniszewski, LCSW, which the ALJ considered.

On December 16, 2016, the Social Security Administration adopted, among other provisions, 20 C.F.R. § 416.1435(b).  81 Fed. Reg. 90987-01.  This provision requires claimants to submit relevant evidence or notify the Commissioner that relevant evidence is outstanding, at least five days before the claimant's hearing.  If the claimant's failure to timely submit the evidence is attributable to good cause, however, the ALJ must admit the evidence into the record.  *See* 20 C.F.R. § 416.1435(b).  The provision went into effect on January 17, 2017 and the Commissioner required compliance with the provision from May 1, 2017 onward.  81 Fed. Reg. 90987-01.

Both parties agree that the ALJ should have admitted the questionnaire into the record.  I agree as well.  Plaintiff sent a letter to the ALJ on May 25th, 2017 that she anticipated submitting

further evidence, and possibly less than five business days prior to the hearing. Several pieces of written evidence were anticipated, including evidence identified as a "questionnaire" sent to Dr. Sabin for her to complete. On June 12, 2017, less than five business days prior to hearing, Plaintiff submitted a questionnaire from Ms. Phillips, PMHNP—the questionnaire simply had Dr. Sabin's name crossed out on the top left corner with Ms. Phillips's name substituted in. Although Dr. Sabin did not complete the questionnaire, Ms. Phillips's questionnaire is clearly the questionnaire that Plaintiff had referenced in the May 25, 2017 letter to the Commissioner. The ALJ did not inform Plaintiff that the evidence was excluded, and Plaintiff therefore did not provide an explanation for its late submission. It appears that either Plaintiff was unaware that the questionnaire should have been directed to Ms. Phillips, and mistakenly addressed it to Dr. Sabin, or that the hospital made a judgement call that Ms. Phillips would be the more appropriate professional to fill out the questionnaire. Either way, and in the light of the fact that Commissioner is conceding the error, I find that the ALJ should have admitted the questionnaire under the good cause exception in § 416.1435(b)(3) and failure to do so was error.

Next, I consider whether the ALJ's error was also a violation of his duty to develop the record.

Plaintiff states that "*Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) requires an ALJ to develop the record where it is either ambiguous or incomplete; but a specific finding of ambiguity or *incompleteness is not required*." Pl.'s Br. 4 (emphasis added). Plaintiff then argues that "because there is *no* evidence in the record as to whether any of the exceptions outlined in 20 C.F.R. § 416.1435(b) might apply, the record is patently incomplete." *Id.* Plaintiff also seems to argue that he was misled by the ALJ because the ALJ failed to inform Plaintiff's counsel that Ms.

Phillips's questionnaire was excluded from the record, which Plaintiff also believes violates the duty to develop the record.

ALJs have an independent duty to fully and fairly develop the record, whether or not the claimant is represented by counsel. *Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996). However, the duty is heightened if a claimant is not represented by counsel. *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003). This duty is only triggered when the evidence is ambiguous or when the record is inadequate to properly evaluate the evidence. *Mayes*, 276 F.3d at 459–60; *see also McLeod v. Astrue*, 640 F.3d 881, 884 (9th Cir. 2010) (explaining that the duty to develop the record is not triggered when the reports of two treating physicians were not unclear or ambiguous).

Here, the ALJ adequately developed the record. Plaintiff is mistaken in his premise: *Tonapetyan* does not require the ALJ to develop the record where the record is "incomplete." Instead, the duty is triggered when the evidence is ambiguous or when "the ALJ[] [finds] that the record is *inadequate* to allow for proper evaluation of the evidence." *Tonapetyan*, 242 F.3d at 1150 (emphasis added). *Tonapetyan*'s discussion of completeness had to do with a testifying physician's concern that the Plaintiff's medical record was incomplete and inhibited a proper assessment of the Plaintiff's mental impairment. *Id.* at 1150–51. The Ninth Circuit concluded that because the ALJ "clearly relied heavily on [the physician's] testimony . . . the ALJ was not free to ignore [the physician's] concern of the lack of a complete record . . . and was not free to ignore [the] specific recommendation that a more detailed report . . . be obtained." *Id.* The issue, then, was that a testifying physician on whom the ALJ was heavily relying had testified that the record was inadequate to allow for a proper evaluation but the ALJ had ignored this part of the physician's testimony. *Id.* The Ninth Circuit found that ignoring this fact violated the ALJ's duty to develop the record because the record was inadequate. *Id.* Therefore, the fact that Plaintiff disagrees with

an ALJ's decision to exclude evidence from the record does not trigger a failure to develop the record issue for incompleteness.

Even assuming, *arguendo*, that Plaintiff's interpretation of *Tonapetyan* is correct, the ALJ's failure to inquire whether any of the exceptions outlined in § 416.1435(b) might apply would not violate the duty to develop the record. A reasonable reading of § 416.1435(b) indicates that the burden is on the claimant to explain why an exception to the general evidence submission rules should apply. *See* 20 C.F.R. 416.1435(b) (stating "[i]f you have evidence required under § 416.912 but you have missed the deadline described in paragraph (a) [the ALJ] will accept the evidence if . . . you did not inform us about or submit the evidence before the deadline because: [an unusual] circumstance beyond your control prevented you from informing us about or submitting the evidence earlier."). Plaintiff provides no reason to believe, via case citations or otherwise, that the burden is on the ALJ to inquire into exceptions or that failing to do so violates the ALJ's duty to develop the record. Accordingly, the ALJ does not err by failing to follow up about the applicability of a potential exception—instead, Plaintiff should accompany his late submissions with an explanation as to why an exception applies.

Moreover, *Tonapetyan* was interpreted in *Mayes* to provide the current rule for triggering the duty to further develop the record: the duty is triggered *only* when the evidence is ambiguous or the record is inadequate to properly evaluate the evidence. *Mayes*, 276 F.3d at 459–60 (emphasis added) (citing *Tonapetyan*, 242 F.3d at 1150). *Mayes* has recognized two circumstances that trigger an ALJ's duty to further develop the record: ambiguity or insufficiency. *Id.* Further, *Mayes*'s inclusion of "only" indicates that at least one of ambiguity or inadequacy are necessary conditions for triggering the duty. *Id.* Neither condition is present in this case. While the duty to develop the record is heightened where a claimant is not represented by counsel under *Celaya*,

Plaintiff was represented by counsel prior to and during the ALJ hearing in this case. *See Celaya*, 332 F.3d at 1183. There is no indication that the Ninth Circuit has expanded the duty to develop to cases other than where the record was ambiguous or inadequate. Thus, while the parties agree that the evidence was improperly excluded, that failure is not an independent failure to develop the record.

I turn next to whether the ALJ's failure to admit Ms. Phillips's opinion statement into the record was a harmful error.

Harmless errors are not grounds for reversing an ALJ. *Stout*, 454 F.3d at 1054. An error is harmless only if the court "can confidently conclude that no reasonable ALJ . . . could have reached a different conclusion." *Id.* at 1056. In other words, legal errors are harmless only if they are inconsequential to the non-disability decision. *Id.* at 1055.

The Commissioner argues that the ALJ's failure to admit the questionnaire was harmless because ALJs are only required to address evidence that is significant and probative under *Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984), and the submitted questionnaire did not need to be addressed because it was incomplete and unsigned, and therefore was neither significant nor probative. The Commissioner also argues that the partially-completed questionnaire was substantially similar to the questionnaire completed by Ms. Miniszewski and the ALJ's criticism of that questionnaire also applies to the questionnaire submitted by Ms. Phillips. Plaintiff argues that Phillips's form was probative and significant as "other sources" evidence under the regulation, that Phillip's hand-written name on the first page of the form constitutes a signature, and essentially that the form was complete enough.

With respect to the signature issue, I find that Ms. Phillip's failure to properly sign the questionnaire does not render it insignificant or not probative. If there is no dispute as to its

authenticity and no evidence that Ms. Phillips does not stand by her assessment of Plaintiff, her failure to properly sign it is immaterial to the evidentiary value of the partially-completed questionnaire. Absent case law to the contrary, a lack of a proper signature page is enough to consider the evidence to be neither significant nor probative. Therefore, failure to admit the partially-completed questionnaire is not harmless.

With respect to the incompleteness issue, I find that Plaintiff's failure to provide a fully completed questionnaire does not render the portion that was submitted insignificant or not probative. The questionnaire includes an assessment of Plaintiff's impairments and limitations by a PMHNP. It solicits answers with respect to Plaintiff's concentration, interactions, symptoms, and side effects of his medication. All of these issues are clearly probative of Plaintiff's limitations, if any. Had the questionnaire been included, the ALJ would therefore have had to assign appropriate weight to the evidence and could not disregard it without comment. *See Vincent*, 739 F.2d at 1395 (an ALJ must explain why any probative evidence has been rejected).

Nevertheless, although the signature page deficiency and the missing page are insufficient reasons to exclude the evidence, I agree that Ms. Phillips's partially-completed questionnaire was substantially similar to the questionnaire submitted by Ms. Miniszewski and therefore the ALJ's failure to address is was harmless error.[2]

"Where the ALJ rejects a witness's testimony without providing germane reasons but has already provided germane reasons for rejecting similar testimony, we cannot reverse the agency merely because the ALJ did not "clearly link his determination to those reasons." *Molina*, 674 F.3d at 1121; *see also Brown v. Berryhill*, 724 F.App'x 615, 615 (2018) ("Even if the ALJ erred

---

[2] Plaintiff also contends that the Commissioner's argument "would have the Court conflate *Molina*'s harmless error analysis of lay witness testimony with its application of the "germane reason" standard. As this section makes clear, that is not how I read the Commissioner's position.

by failing to provide substantial evidentiary support for discounting lay witness testimony by [Plaintiff]'s husband[,] any error was harmless because the testimony described substantially similar limitations as [Plaintiff]'s testimony, and the "ALJ's reasons for rejecting [Plaintiff's] testimony apply with equal force to the lay testimony.").

Here, the ALJ discounted Ms. Miniszewski's substantially similar assessment for several reasons. In assessing Plaintiff's degree of limitations, Ms. Miniszewski checked "marked" in response to all three questions on the questionnaire. Tr. 19. However, the ALJ found Ms. Miniszewski's assessment to be unsupported by her own treatment records. He also found her assessment to be inconsistent with the Plaintiff's performance on consultative mental status exams. The ALJ therefore gave "little weight" to Ms. Miniszewski's assessment.

Ms. Phillips opined that Plaintiff's limitations were well beyond "Marked" and instead assessed Plaintiff's degree of limitations as "Extreme." Under *Molina*, an ALJ's failure to address relevant evidence is harmless if similar evidence was discounted for legally sufficient reasons that could apply to both pieces of evidence. *Molina*, 674 F.3d at 1121. Any reasonable ALJ that finds "marked" limitations to be unsupported by the objective record would surely find "extreme" limitations to also be unsupported by that same record. That is, had the ALJ included Ms. Phillip's partially-completed questionnaire in the record it would also have been reasonable to discount its even more severe assessment of Plaintiff's limitations for the same reasons he discounted Ms. Miniszewski's, *i.e.*, because the assessment would not have been supported by the objective evidence. Thus, to the extent that the ALJ properly assessed Ms. Miniszewski's opinion, the addition of Ms. Phillips's opinion could not have changed his ultimate disability determination. It follows, then, that failing to include Ms. Phillip's opinion is harmless error.

The only remaining issue is whether the ALJ did in fact provide germane reasons for discounting Ms. Miniszewski's opinion. As explained further in section III, the ALJ found that Ms. Miniszewski's assessment was unsupported by her own treatment records and found her assessment inconsistent with Plaintiff's performance on consultative mental status exams. These are all germane reasons for discounting Ms. Miniszewski's opinion, and I find that the ALJ did not commit harmful error.

## II.    Incorporating RFC Limitations

Plaintiff argues that the ALJ failed to properly incorporate Plaintiff's adaptation limitations into the RFC because the RFC fails to state that Plaintiff requires a predictable work environment—the limitation found by the Disability Determination Services psychological consultants, Drs. Kaper and Kessler ("State Psychologists"). I disagree. The ALJ states

> I find that the claimant has the [RFC] to perform a full range of work . . . with the following nonexertional limitations: He is limited to simple, routine, tasks consistent with occupations with an SVP of 1 or 2 and a general education development GED level not exceeding 2. He should have no public contact. He is limited to work involving no more than superficial coworker contact and no teamwork.

Tr. 14–5.

Within the same section, the ALJ acknowledged the State Psychologists believe that Plaintiff is "able to sustain attention, concentration and persistent for simple tasks . . . is limited to occasional contact with the public and others in the workplace . . . is able to interact appropriately with supervisors [and] needs a predictable work environment." Tr. 18. The ALJ then states that "[g]reat weight is given to the opinion of Dr. Kaper and Dr. Kessler." *Id.* This is not a legally problematic consideration of the State Psychologists' assessed limitations in the RFC.

Plaintiff argues that because the adaptation limitations assessed by the State Psychologists are not word-for-word in the RFC section heading, that this evinces a failure of the ALJ to properly

include their opinion in the RFC. But the RFC only needs to be consistent with the credibly-assessed limitation, not identical to it. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222–23 (9th Cir. 2010). The Court must also uphold the ALJ's interpretation of the record if his interpretation is reasonable, even if other rational interpretations are supported by the evidence. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

Here, there is a difference between an ALJ's intention to reject an opinion and an intention to interpret and account for the opinion in the RFC, and there is no reason to think that the latter is unacceptable or didn't happen in this case. Thus, I find that the opinions of the State Psychologists were appropriately incorporated into the RFC.

Plaintiff also contends that the ALJ failed to account for Plaintiff's need for a predictable work environment in his VE hypotheticals during the administrative hearing. But, as explained above, the ALJ reasonably took this limitation into account by limiting Plaintiff to routine tasks. Additionally, even if the ALJ should have explicitly referenced the need for a predictable work environment in the VE hypotheticals, the failure is harmless error.

The VE testified that janitors, recyclers, and laboratory helpers would be appropriate jobs for Plaintiff. Under Plaintiff's view, presumably there is a world in which the VE would no longer suggest janitors, recyclers, and laboratory helpers as appropriate jobs for Plaintiff had the ALJ made clear that Plaintiff needs a predictable work environment. Or, maybe the ALJ would not believe that janitors, recyclers, and laboratory helpers, are appropriate jobs for Plaintiff if he had referenced this limitation more liberally throughout his opinion. This is not sensible. When considering job duties, courts may rely on common experience and common sense. *See Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016) ("But anyone who's made a trip to the corner grocery store knows that while a clerk stocking shelves has to reach overhead frequently, the typical cashier

never has to."). Common sense tells us that janitors, recyclers and laboratory workers *generally* work in the same building, around the same people, with consistent work hours, *i.e.*, in a predictable work environment.

Plaintiff believes that the Court would be speculating if it concludes as such. But applying common sense is not legally forbidden speculation. *Gutierrez*, 844 F.3d at 808. And Plaintiff's criticism that since laboratory helpers could be working in both a "dry environment" and "wet environment," and therefore cannot be said to necessarily work in a "predictable" environment is unconvincing. Pl's. Reply Br. 7. Because all three jobs exist in significant number in the national economy, even if not all of them are performed in a predictable work environment, at least one type of job almost certainly generally is and that is all that the ALJ had to legally identify to meet the significant number standard. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (stating that 25,000 jobs in the national economy is a significant number). The ALJ found that there were 2,000,000 janitorial jobs, 55,000 laboratory helper jobs, and 44,000 recycling jobs in the national economy. All these positions are reasonably understood as having a predictable work environment with daily tasks that are sufficiently routine by any measure. Therefore, I find that the ALJ's failure to specify a need for a predictable work environment to the VE to be harmless error.

Plaintiff also analogizes this case to *Bartlett v. Berryhill*, 6:16-CV-01069-CL, 2018 WL 1903137, at *6 (D. Or. Mar. 28, 2018). Plaintiff states that in *Bartlett* the consulting psychologists opined that the claimant needed a predictable job setting and the court found legal error because the RFC only included a reference to simple and routine tasks. However, the Magistrate Judge in that case did not assess whether the error was harmful and a review of the parties' briefs indicates that the argument was never put forward. Finally, there is no law of the district and this intra-

district case is not binding upon this Court. *See Starbuck v. City of San Francisco*, 556 F.2d 450, 457 n.13 (9th Cir. 1977) ("The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another."). Therefore, I don't find the reasoning in *Bartlett* to be dispositive of this issue in Plaintiff's favor.

III.    *The ALJ's Consideration of the Medical Opinion Evidence*

Plaintiff also argues that the ALJ erred by failing to properly weigh the opinions of Charlene Sabin, M.D., Scott Alvord, Psy.D., Tasha Miniszewski, LCSW, as well as the opinions of Drs. Scott Kaper and Ben Kessler, the State psychological consultants. I disagree.

A.    *Charlene Sabin, M.D.*

With respect to Dr. Sabin, Plaintiff argues that the ALJ rejected Dr. Sabin's diagnosis of ADHD, while the Commissioner argues that the diagnoses of ADHD is captured within the broader umbrella term of neurodevelopmental disorders.

Even if ADHD is a correct diagnosis for Plaintiff, the ALJ appears to have fully considered it. The ALJ's opinion explicitly credits Plaintiff with having a neurodevelopmental disorder. The ALJ also noted that Plaintiff's psychiatric disorders were given various labels but that all of his psychiatric symptoms were considered in his decision. ADHD is listed as a neurodevelopmental disorder under the American Psychiatric Association's *Diagnostic & Statistical Manual Mental Disorders*. (5th ed. 2013) ("DSM-5"). It is thus captured within the broader umbrella term of neurodevelopmental disorders, which the ALJ clearly considered. Therefore, I find no error.

B.    *Scott Alvord, Psy.D.*

Plaintiff argues that the ALJ erred by discounting Dr. Alvord's opinion by only giving it "some weight."

ALJs are responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1157, 1164 (9th Cir.

Page 15 – OPINION AND ORDER

2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.* The same "clear and convincing" standard applies to rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042–43.

Dr. Alvord was Plaintiff's examining psychologist whose opinion was found by the ALJ to be contradicted by other evidence in the record. The ALJ gave Dr. Alvord's opinion reduced weight because Dr. Alvord opined that Plaintiff has a "borderline" IQ even though formal testing indicated that Plaintiff's IQ was normal. The ALJ also noted that Dr. Alvord failed to provide a rationale for the nature and extent of his assessed limitations. All of the ALJ's stated reasons meet the "specific and legitimate reasons" standard. *See Tommasetti*, 533 F.3d at 1040; *see also, Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding no error where the ALJ considered inconsistencies between the claimant's testimony and objective medical evidence as one of many reasons for discounting the testimony). Therefore, I find no error.

### C. Tasha Miniszewski, LCSW

Plaintiff argues that greater weight should have been given to Ms. Miniszewski's opinion because "the record as a whole" supports her limitation opinion.

Under the applicable regulations, only licensed physicians and certain other qualified specialists are considered "[a]cceptable medical sources." 20 C.F.R. § 404.1513(a); *see also* Social Security Ruling ("SSR") 06-03p, *available at* 2006 WL 2329939 (Aug. 9, 2006) (defining "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists). Other health care providers who are not "acceptable medical sources," such as "nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists," are still considered "medical sources" under the regulations, and the ALJ can use these other medical source opinions in determining the "severity of the individual's impairment(s) and how it affects the individual's ability to function." 20 C.F.R. § 404.1513(d). Because Ms. Miniszewski is a licensed clinical social worker, she is considered an "other" medical source.

To reject the competent testimony of "other" medical sources like Ms. Miniszewski, the ALJ need only give "reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111 (quoting *Turner*, 613 F.3d at 1224). In rejecting such testimony, the ALJ need not cite the specific record so long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

At the time of the administrative hearing, Ms. Miniszewski had been Plaintiff's therapist since April of 2016. The ALJ gave "little weight" to Ms. Miniszewski's opinion because her opinion was unsupported by her own treatment records and inconsistent with the Plaintiff's performance on consultative mental status exams in 2016 and 2017. With respect to the treatment record inconsistency, Ms. Miniszewski submitted a questionnaire indicating that Plaintiff had marked limitations in every assessed domain, but her treatment records indicate that she believes Plaintiff's appearance, behavior, and reactions towards the interviewer were appropriate and within the reasonable range. With respect to Plaintiff's performance on mental status exams, the results indicated that Plaintiff's performance was generally within the normal range and therefore did not support the "marked" limitations assessed by Ms. Miniszewski. These are germane reasons under *Molina*. To the extent that germane reasons are provided and the ALJ's interpretation of the record is reasonable, the ALJ's assessment is not legally deficient. Because I find these standards to be met, the ALJ did not err.

### D. State Agency Psychological Consultants

Plaintiff argues that the ALJ erred in giving "great weight" to the opinions of the State agency's psychological consultants because the record they reviewed was incomplete, *i.e.*, it did include information about Plaintiff's condition subsequently worsening.

State agency reviewing doctors are highly qualified experts in disability evaluations. 20 C.F.R. § 404.1527(e)(2)(i). An ALJ may not ignore the opinions of State agency medical and psychological consultants regarding the nature and severity of impairments and must explain the weight given to them. SSR 96-6P(1)-(2), *available at* 1996 WL 374180, at *1–2 (Jul. 2, 1996); *see also* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) (because State agency medical and psychological consultants are highly qualified experts in Social Security disability evaluation, an ALJ must consider their findings as opinion evidence); *Sawyer v. Astrue*, 303 F.App'x 453, 455 (9th Cir. 2008). "[T]he proposition that the most recent medical report is the most probative . . . applies where a claimant's condition is progressively deteriorating, and the ALJ is attempting to determine whether a claimant is disabled at all." *Magallanes v. Bowen*, 881 F.2d 747, 754–55 (9th Cir. 1989).

Here, the ALJ reasonably assessed the opinions of the State Psychologists. They opined that Plaintiff remains able to sustain attention and persistence for simple tasks, that he is limited to occasional public and workplace contact, that he is able to appropriately interact with supervisors, and that he needs a predictable work environment. The ALJ found that their opinions were consistent with Plaintiff's assessed social functioning and mental status exams and therefore accorded their opinion "great weight."

The fact that further evidence was introduced into the record after the State Psychologists gave their opinion is not a reason to discount their professional opinion as a matter of law. The ALJ's opinion indicates that he assessed the opinions of the State Psychologist in light of the record, which indicates that the evidence introduced subsequent to their assessment was considered. Plaintiff argues that because his PTSD worsened in 2017, after the State Psychologists conducted their review of the Plaintiff's records, that it was "harmful legal error" for the ALJ to

rely on the State Psychologists' opinion. Pl.'s Br. 25. But the ALJ did not simply adopt the opinion

of the State Psychologists. He reviewed their opinions and assessed their consistency with other

evidence in the record, such as Plaintiff's limited social functioning and the mental status exam

administered in May of 2017. Thus, there is no legal error.

IV.    *Testimony of Plaintiff and His Mother*

Plaintiff also argues that the ALJ failed to properly evaluate the credibility of his testimony

and that of his mother, Kimberly L.

To determine whether a claimant's testimony regarding his symptoms are reliable the ALJ

must engage in two-step analysis. *Tommasetti*, 533 F.3d at 1039. First, the claimant must

"produce objective medical evidence of an underlying impairment or impairments that could

reasonably be expected to produce some degree of symptom." *Id.* If the claimant produces this

evidence and there is no evidence of malingering, the ALJ can reject the claimant's testimony

about the severity of his symptoms only with specific clear and convincing reasons. *Id.* (internal

quotation marks omitted). "In determining credibility, an ALJ may engage in ordinary techniques

of credibility evaluation, such as considering . . . inconsistencies in claimant's testimony." *Burch

v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Here, the ALJ found that the medical evidence did to not corroborate the severity Plaintiff's

alleged symptoms. Although subjective complaints cannot be rejected simply because they lack

full objective medical support, the ALJ can consider the credibility of claimant's allegations.

*Garrison*, 759 F.3d at 1009 (internal citation omitted). In this case, in addition to the lack of

objective medical evidence, there were significant disagreements between the examining

physicians retained by the Commissioner and Plaintiff.

With respect to the objective tests, almost none corroborated the degree of limitations that

Plaintiff alleged. To the extent that Plaintiff was diagnosed with a creditable condition under the

Social Security disability rules, his condition seems to have improved when it was properly treated *e.g.*, by taking antidepressant medication. For example, in December 2015, Plaintiff was hospitalized for suicidal ideation but his symptoms improved after he was prescribed anti-anxiety and antidepressant medication.

In March 2016, Dr. Reynolds examined Plaintiff and conducted a medical exam with formal testing. Dr. Reynolds concluded that Plaintiff's condition was largely normal with respect to both memory and IQ. Dr. Reynolds suggested Plaintiff would benefit from a regular schedule and routine, including consistent bedtime and therapy for his PTSD symptoms. The following month, Plaintiff attempted to overdose with antidepressant medication but after waking up in the hospital, he had a normal mood and affect. He was noted to have had a quick turnaround and a subsequent visit in September 2016 indicated that his mood and affect were still normal. In January 2017, he was hospitalized again after an overdose of medication in an attempt to "get high." But he stated that it was not a suicide attempt and that he was simply using his medication recreationally. The Emergency Documentation notes indicated that Plaintiff's mental status examination results appear to be more consistent with recreational drug use than a suicide attempt. Subsequent mental status examinations over the next few months again demonstrated normal mood and affect without any behavioral abnormalities. *See e.g.*, Tr. 514, 539, 544. In the face of this gyration between issues and hospitalizations, the ALJ noted that treatment seems to return Plaintiff back to normalcy—a legally sound reason for discounting the severity of symptoms alleged by Plaintiff.

Additionally, the ALJ also found that Plaintiff's activities were inconsistent with the degree of limitation he alleged. For example, Plaintiff alleged that he only left the house once or twice per week and "never, never, never, never, never" went out alone because of anxiety. Tr. 48. He

also claimed that he would have a panic attack if he did not have someone that he trusted with him constantly. However, he testified to regularly riding his bicycle, taking his dog for a walk, meeting his friends out, and riding the train by himself. The ALJ found that although Plaintiff has social limitations, his activities were inconsistent with the degree of limitation he alleged. This was a reasonable finding and as such, the ALJ did not err.

Plaintiff also alleges that the ALJ inappropriately discounted the statements of his mother, Mrs. L.

With respect to lay witnesses, an ALJ only needs to give germane reasons for discounting their testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). One such reason is inconsistency with medical evidence. *Id.* The ALJ discounted Mrs. L.'s statements because he found that her statements conflicted with mental status examination results discussed above. The exams simply don't support the level of dysfunction that Mrs. L. testified to, *e.g.*, she testified that Plaintiff did not communicate well, is anxious and nervous, and can't handle stress. Under the germane reason standard, inconsistency with medical evidence suffices as a reason for discounting the testimony of a lay witness. Additionally, Mrs. L.'s testimony was undermined by concerns of Plaintiff's former principal about Plaintiff's manipulative behavior. Plaintiff's principal remarked several times that she had seen manipulative behavior directed at his parents and staff members. *See* Tr. 226, 228, 230. She wrote that Plaintiff would be capable of graduating and holding down a full-time job if he were in a different living environment. Her concerns about manipulative behavior involving medical issues directed toward his parents, as well as her concerns that Plaintiff's home environment significantly contributed to his issues, provide another germane reason for discounting the statement from Plaintiff's mother about the extent of his limitations. Therefore, the ALJ's treatment of Mrs. L.'s testimony is not legal error.

## CONCLUSION

The Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this _22_ day of January, 2019.

_Ann Aiken_
Ann Aiken
United States District Judge